UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD JAMAL SANDERS (#249473),

                              CASE NO. 2:10-CV-12846

          Plaintiff,           JUDGE GERALD E. ROSEN
                              MAGISTRATE JUDGE PAUL J. KOMIVES

v.

PRISON HEALTH SERVICE, INC. and
MICHIGAN DEPARTMENT OF CORRECTIONS,

               Defendants,

_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANT MDOC'S JUNE 16, 2011 MOTION TO DISMISS (Doc. Ent. 43),
PLAINTIFF'S JULY 14, 2011 MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 48)
and PLAINTIFF'S AUGUST 1, 2011 MOTION FOR APPOINTMENT OF COUNSEL
(Doc. Ent. 51)**

I.      **RECOMMENDATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.     The Remaining Defendants are PHS and MDOC. . . . . . . . . . . . . . . . . . . . . . . . 2
     B.     Plaintiff's March and April 2011 Letters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.     The Court's June 3, 2011 Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          1.     Defendant MDOC's June 16, 2011 Motion to Dismiss (Doc. Ent. 43) . . . 6
          2.     Plaintiff's July 14, 2011 motion for summary judgment (Doc. Ent. 48)
              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          3.     Plaintiff's August 1, 2011 motion for the appointment of counsel (Doc.
              Ent. 51) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.    NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . 20

I.     **RECOMMENDATION:**  The Court should grant defendant MDOC's June 16, 2011

motion to dismiss (Doc. Ent. 43), deny plaintiff's July 14, 2011 motion for summary judgment

(Doc. Ent. 48) and deny without prejudice plaintiff's August 1, 2011 motion for appointment of

counsel (Doc. Ent. 51).

II.    **REPORT:**[1]

A.     **The Remaining Defendants are PHS and MDOC.**

On July 20, 2010, while he was incarcerated at Mound Correctional Facility (NRF) in

Detroit, Michigan, plaintiff Howard Jamal Sanders (#249473) filed the instant lawsuit against

defendants Prison Health Services, Inc. (PHS); Richard Hallworth;[2] Lawrence H. Pomeroy;[3]

Haresh B. Pandya; and the Michigan Department of Corrections (MDOC) (Regional Medical

Office or Bureau of Health Care).  Doc. Ent. 1 at 1-9.

Sanders was released from prison on July 27, 2010, and he informed the Court of an

address to which his information could be sent: 3737 Lawton, Detroit, Michigan 48208.  Doc.

Ent. 6.  On August 5, 2010, the Court entered an order waiving prepayment of the filing fee and

directing payment of the initial partial filing fee and subsequent payments.  Doc. Ent. 5.[4]

---

[1]In addition to the instant case, plaintiff filed *Sanders v. Michigan First Credit Union, et al.*, Case No. 2:10-cv-12517-SJM-VMM on June 24, 2010, wherein judgment was entered on August 10, 2010.  Also, plaintiff filed *Sanders v. Michigan Department of Corrections, et al.*, Case No. 2:11-cv-12563-PDB-RSW on June 13, 2011.

[2]Rich Hallworth is the President and Chief Executive Officer of PHS Correctional Healthcare.  *See* www.phscorrections.com, "Our People."

[3]Lawrence H. Pomeroy is the President, State Corrections, for PHS.  *See* www.phscorrections.com, "Our People," "Current Leadership."

[4]The copy of this order mailed to Sanders was returned on the basis that Sanders had been paroled.  Doc. Ent. 8.

2

On August 6, 2010, plaintiff filed a verified amended complaint, wherein he named PHS, Hallworth, Pomeroy, Pandya and the MDOC (Regional Medical Office or Bureau of Health Care) as defendants.  Doc. Ent. 7 at 1-8.[4]  On August 30, 2010, Judge Rosen entered an order of partial dismissal, wherein he summarily dismissed defendants Hallworth, Pomeroy and Pandya but concluded that plaintiff had stated an arguable claim against defendant PHS.  Doc. Ent. 10.

On November 15, 2010, the U.S. Marshal attempted service of process by mail upon defendants MDOC and PHS, Inc.  *See* Doc. Entries Jan. 19, 2011.  Appearances of counsel have been entered on behalf of the MDOC and PHS, Inc.  Doc. Entries 12, 16, 17 and 18.[5]

It appears that plaintiff was reincarcerated on or about February 4, 2011.  *See* www.michigan.gov/corrections, "Offender Search," Image Date.  According to plaintiff, he was incarcerated at the Charles Egeler Reception & Guidance Center (RGC) from February 4, 2011 to March 16, 2011.  Doc. Ent. 32.  By a letter dated March 6, 2011 and filed on March 15, 2011, plaintiff informed the Court that his address was 3855 Cooper Street - the location for RGC.  Doc. Ent. 27.  On March 25, 2011, plaintiff notified the Court that his new address was the Cooper Street Correctional Facility (JCS) in Jackson, Michigan, which is located at 3100 Cooper Street, but he provided the street address for RGC.  Doc. Ent. 30.  Currently, plaintiff is incarcerated at

---

[4]Attached to the amended complaint are MDOC Health Care Requests from Mound Correctional Facility (NRF) and Ryan Correctional Facility (RRF) (Doc. Ent. 7 at 9-13), grievance materials (Doc. Ent. 7 at 14-21), and a letter to Judge Rosen from plaintiff, wherein he seeks to amend his complaint (Doc. Ent. 7 at 22).

[5]On December 13, 2010, Assistant Attorney General Thomas Leonard filed a substituted appearance of counsel on behalf of the MDOC.  Doc. Ent. 16.  The docket indicates that attorney Leonard has not been sworn before this Court.  He must do so before appearing in person before this Court.  *See* E.D. Mich. LR 83.20 ("Attorney Admission").

G. Robert Cotton Correctional Facility (JCF), which is located at 3500 N. Elm Road in Jackson,

Michigan.  *See* www.michigan.gov/corrections, "Offender Search."

**B.     Plaintiff's March and April 2011 Letters**

By a letter dated March 6, 2011 and filed March 15, 2011, plaintiff informed the Court

that his address had changed to the RGC.   Furthermore, plaintiff sought the status of his lawsuit.

Specifically, plaintiff wanted to know whether PHS had been served; if so, when; and whether

PHS had responded.  Plaintiff requested entry of default judgment as to PHS if it had been served

and had not responded.  Doc. Ent. 27.

In a letter dated March 23, 2011 and filed March 25, 2011, plaintiff contends there is

MDOC "staff corruption."  Doc. Ent. 32 at 1-2.  Plaintiff contends that, during his February 4,

2011 to March 16, 2011 incarceration at RGC, he completed two (2) Expedited Legal Mail

Disbursement Authorizations, each of which he claims were turned in to ARUS Washington's

mailbox - one on March 8, 2011 and one on March 9, 2011 (Doc. Ent. 32 at 3-4).  Plaintiff takes

issue with RGC's procedure for processing such requests and alleges he has "become a victim of

crime."  After describing his concerns with the way ARUS Washington handled these requests

and taking issue with the two-day period it took to get these matters in the mail, plaintiff

represents that he has filed several grievances and concerns as to his legal mail, "to no avail."

Plaintiff alleges that there has been a violation of Mich. Comp. Laws § 750.249, Subsection (1) of

which provides: "[a] person who utters and publishes as true a false, forged, altered, or counterfeit

record, deed, instrument, or other writing listed in section 248 . . . knowing it to be false, altered,

forged, or counterfeit with intent to injure or defraud is guilty of a felony punishable by

imprisonment for not more than 14 years."  Mich. Comp. Laws § 750.249(1) (internal footnote

4

omitted).  Plaintiff alleges that the two disbursement requests processed by ARUS Washington "are not true documents[,]" and requests "an outside investigation" by Internal Affairs or the Michigan State Police.[5]

Then, while incarcerated at JCS, plaintiff wrote a letter dated April 4, 2011 and filed April 6, 2011.  Therein, plaintiff described his March 2011 letter as a motion for default judgment; cited Fed. R. Civ. P. 55 and Fed. R. Civ. P. 12; and stated that PHS did not respond to the summons and complaint.  Also, plaintiff pointed to PHS's January 14, 2011 motion (Doc. Ent. 22) for an enlargement of time in which to respond to the complaint, which I denied as moot on March 7, 2011 (Doc. Ent. 26).  In the end, plaintiff requested that the Clerk of the Court "[c]ompute the sum in [this case] and enter a default judgment[.]"  Doc. Ent. 34 at 1.

## C.    The Court's June 3, 2011 Order

On December 7, 2010, MDOC filed a motion to revoke in forma pauperis status under § 1915(g).  Doc. Ent. 14.  PHS filed a similar motion on January 14, 2011.  Doc. Ent. 23.  On May 11, 2011, I filed a report recommending that the Court grant defendants' motions and revoke plaintiff's IFP status.  Doc. Ent. 35.

However, on June 3, 2011, Judge Rosen entered an order rejecting my report and recommendation and denying defendants MDOC's and PHS's motions to revoke in forma pauperis status under 28 U.S.C. § 1915(g).  Doc. Ent. 38.  On the same day, Judge Rosen re-referred this case to me to conduct pretrial matters.  Doc. Ent. 39.[6]

---

[5]ARUS Washington is a defendant in *Sanders v. Michigan Department of Corrections, et al.*, Case No. 2:11-cv-12563-PDB-RSW.

[6]This case was originally referred to me for all pretrial matters on December 3, 2010.  Doc. Ent. 13.

On June 8, 2011, I entered a scheduling order setting the discovery deadline for September 8, 2011 and the dispositive motion deadline for October 8, 2011.  Doc. Ent. 40.

**D.    Analysis**

Currently, there are three (3) motions pending before the Court:

**1.    Defendant MDOC's June 16, 2011 Motion to Dismiss (Doc. Ent. 43)**

**a.**    On June 16, 2011 - the same day PHS filed its answer to the amended complaint - defendant MDOC filed a motion to dismiss, in which it argues, "[t]he Michigan Department of Corrections is a State agency that has immunity under the Eleventh Amendment, and must be dismissed from this action."  Doc. Ent. 43 at 7.[7]  Plaintiff filed a response on July 1, 2011, wherein he argues that the MDOC "is not entitled to dismissal when it is an agency of the State of Michigan."  Doc. Ent. 46 at 4.

To begin, the Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Although the amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued.  *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (citing *Hans*); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion); *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).

---

[7]On June 20, 2011, I entered an order setting the response deadline for August 1, 2011.  Doc. Ent. 44.

"[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100; *see also, Papasan v. Allain*, 478 U.S. 265, 276 (1986).  *See also Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("[S]uit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [Michigan] has consented to the filing of such a suit."). Furthermore, as the Supreme Court made clear in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity."  *Will*, 491 U.S. at 66 (internal citations omitted).

**b.**     Plaintiff's claims for relief include compensatory and punitive damages.  Doc. Ent. 7 at 7-8 ¶¶ 1-8.  Plaintiff's claims for monetary damages are barred to the extent sought from defendant MDOC, because the MDOC is not a "person" under 42 U.S.C. § 1983.  *See Brown v. Michigan*, No. 2:09-12975, 2009 WL 2750949, 2 (E.D. Mich. Aug. 26, 2009) (Friedman, J.) ("The complaint must also be dismissed against the Michigan Department of Corrections, because it, too, is not a 'person' subject to suit under 42 U.S.C. § 1983, and thus, the Eleventh Amendment would bar plaintiff's civil rights action against the Michigan Department of Corrections for monetary damages for the alleged exposure to second-hand tobacco smoke.") (citing *Rodgers v. Michigan Dept. of Corrections*, 29 Fed. Appx. 259, 260 (6th Cir.2002) and *Davis v. Michigan Dept. of Corrections*, 746 F.Supp. 662, 666 (E.D. Mich.1990) (Zatkoff, J.).

In his response, plaintiff disagrees that the Eleventh Amendment bars a 42 U.S.C. § 1983 lawsuit against a state agency.[8]  Doc. Ent. 46 at 5.  To the extent plaintiff argues that this is "a suit challenging the constitutionality of a state official's action [and] is [therefore] not one against the State[,]" *Pennhurst State School & Hosp.*, 465 U.S. at 102, I note that MDOC - as opposed to a particular MDOC employee - is the defendant here.  *See Abick v. State of Mich.*, 803 F.2d 874, 877 (6th Cir. 1986) ("Here, only the entity of the State Judicial Council was named as a defendant. No particular individual's conduct is challenged as unconstitutional so the exception cannot apply. The State Judicial Council shares Michigan's sovereign immunity provided by the Eleventh Amendment.").

This conclusion is unchanged by plaintiff's description of an Eighth Amendment claim for deliberate indifference to a serious medical need and plaintiff's observation that "[n]umerous prisoner suits all[e]ge [Eighth] Amendment violations stemming from inadequate [m]edical care." Doc. Ent. 46 at 4.  For example, plaintiff notes, it has been stated that "[w]hen a supervisory official is placed on actual notice of a prisoner's need for physical protection or medical care, 'administrative negligence can rise to the level of deliberate indifference to or reckless disregard for that prisoner's safety.'" *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981) (quoting *West v. Rowe*, 448 F.Supp. 58, 60 (N.D. Ill. 1978)).  Plaintiff also notes the Sixth Circuit's direction that, "no physical injury is required for a prisoner to recover on an Eighth Amendment claim of

---

[8]To the extent plaintiff argues that a 42 U.S.C. § 1983 suit may be brought against PHS, who is contracted by the MDOC, he is correct.  "It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (citing *West v. Atkins*, 487 U.S. 42, 54 (1988)).

8

deliberate indifference to medical needs. Extreme conduct by custodians that causes severe emotional distress is sufficient." *Hicks v. Frey*, 992 F.2d 1450, 1457 (6ᵗʰ Cir. 1993).

Plaintiff contends that his response contains citations to numerous Eighth Amendment cases wherein an agency and its contractor can be sued. Doc. Ent. 46 at 5. However, the Sixth Circuit has stated that "state agencies, including corrections departments and defendants in their official capacities, cannot be sued for monetary damages without the state's consent, pursuant to the Eleventh Amendment." *Walker v. Michigan Dept. of Corrections*, 128 Fed.Appx. 441, 445 (6ᵗʰ Cir. 2005) (citing *Turker v. Ohio Dep't of Rehab. and Corr.*, 157 F.3d 453, 456-57 (6ᵗʰ Cir. 1998) and *Pennhurst State Sch. & Hosp.*, 465 U.S. at 98-101). Again, the defendant in this case is the MDOC and not an MDOC official.

**c.**     Furthermore, none of the three qualified exceptions to Eleventh Amendment immunity, as set forth in *Lawson v. Shelby County, TN*, 211 F.3d 331, 334 (6th Cir. 2000), operate to sustain plaintiff's claims for monetary damages from the MDOC.

First, "a state may waive the protection of the Amendment by consenting to the suit." *Lawson*, 211 F.3d at 334. Citing *Abick v. Michigan*, 803 F.2d 874, 876-877 (6ᵗʰ Cir. 1986), defendant MDOC claims that "[c]laims against [it] are barred by the Eleventh Amendment." Furthermore, defendant MDOC explains that it "is a state agency responsible for housing inmates in Michigan. It has not consented to be sued in federal court. Since no consent to suit has been given in this case, the [MDOC's] motion to dismiss should be granted." Doc. Ent. 43 at 7.

In his response, plaintiff claims that, because counsel for MDOC did not acknowledge plaintiff's complaint - "by not responding [or] filing a [request] for an extension of time to reply or respond[,]" - this shows that the MDOC "gave a consent and indication to sue[.]" Plaintiff

claims it was not until the MDOC's June 16, 2011 motion to dismiss (Doc. Ent. 43) - nearly one year after the July 20, 2010 filing of plaintiff's original complaint - that the MDOC asserted its argument that it had not consented to suit. Plaintiff disagrees that the MDOC has to provide consent to be sued and claims the MDOC blatantly disregarded the complaint. Furthermore, plaintiff argues that the MDOC's failure to respond to the summons and complaint shows its consent to suit. Doc. Ent. 46 at 5.[9]

However, plaintiff misinterprets the operation of the consent exception. A state does not waive its Eleventh Amendment immunity by being tardy in responding to the lawsuit. As previously stated, "a state may waive the protection of the Amendment by consenting to the suit." *Lawson*, 211 F.3d at 334. And, "[t]he state of Michigan has not consented to civil rights suits in the federal courts[.]" *McFadden v. Commissioner of Social Security*, 5 Fed.Appx. 388, 390 (6th Cir. 2001) (referencing *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986)). As the United States Supreme Court has also explained, "[i]t is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Courtemanche v. Gregels*, 79 Fed.Appx. 115, 116, 2003 WL 22435652, 1 (6th Cir. 2003) (referencing *Pennhurst*, 465 U.S. at 100) ("[T]he State of Michigan and MDOC had immunity from suit under the Eleventh Amendment."). And, this Court has stated, "[t]he State of Michigan has not consented to civil rights suits in the federal courts, *see Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir.1986), and, consequently, the claims against the MDOC should be

---

[9]On the same day, plaintiff filed an affidavit, which makes no specific allegations against the MDOC. Doc. Ent. 47 (Affidavit).

dismissed." *Moffat v. Michigan Dept. of Corrections*, No. 09-14696 (Doc. Ent. 74 at 17), 2010

WL 3906667, 8 (E.D. Mich. May 21, 2010) (report and recommendation of Morgan, M.J.).[10]  *See*

*also Walker*, 128 Fed.Appx. at 445 ("The district court first dismissed MDOC as a defendant, on

Eleventh Amendment grounds, since Walker's suit is solely for monetary damages and not for any

equitable relief.  We have previously noted that state agencies, including corrections departments

and defendants in their official capacities, cannot be sued for monetary damages without the

state's consent, pursuant to the Eleventh Amendment.") (citing *Turker*, 157 F.3d at 456-457, and

*Pennhurst*, 465 U.S. at 98-101)).

Second, "Congress, under certain provisions of the Constitution, may abrogate the

sovereign immunity of the states through statute." *Lawson*, 211 F.3d at 334.  "Congress has not

chosen to abrogate the states' immunity for suits under §§ 1981, 1983, and 1985(3)[.]" *Hines v.*

*Mississippi Dept. of Corrections*, No. 00-60143, 2000 WL 1741624, 3 (5th Cir. Nov. 14, 2000)).

Third, "a federal court may enjoin a 'state official' from violating federal law." *Lawson*,

211 F.3d at 335 (citing *Ex parte Young*, 209 U.S. 123 (1908)).  To come within this exception, the

relief sought by the plaintiff must be (1) against a state official; (2) for prospective injunctive

relief; and (3) to remedy a continuing violation of federal law.  *Strahan v. Coxe*, 127 F.3d 155 (1st

Cir. 1997) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996)).  *See also Verizon*

*Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).  First, as noted

above, defendant MDOC is not a state official.  Also, assuming plaintiff's claims are based events

which allegedly took place at NRF and RRF, Doc. Ent. 7 at 2-4 (Statement of Facts), 6 (Claims),

---

[10]Judge Hood accepted and adopted this report and recommendation. *See* Case No. 09-14696
(Doc. Ent. 84 at 7).

9-21 (Attachments), noting that his prayers for relief include compensatory and punitive damages, Doc. Ent. 7 at 7-8, and even considering that the prayer for relief requests compensation for continued "health care" damages, Doc. Ent. 7 at 8 ¶ 7, it does not appear that plaintiff is seeking prospective injunctive relief.

For these reasons, the Court should grant defendant MDOC's June 16, 2011 motion to dismiss (Doc. Ent. 43).

**2.    Plaintiff's July 14, 2011 motion for summary judgment (Doc. Ent. 48)**

On July 14, 2011, plaintiff filed a motion for summary judgment. Doc. Ent. 48 at 1-3. Although plaintiff's July 14, 2011 filing is titled, "Motion for Summary Judgment," cites Fed. R. Civ. P. 56 and seeks entry of summary judgment against PHS and MDOC, plaintiff's motion is really based upon Fed. R. Civ. P. 55(a) ("Entering a Default.") and Fed. R. Civ. P. 55(b) ("Entering a Default Judgment.").

Interpreting plaintiff's motion as one brought pursuant to Fed. R. Civ. P. 55, I begin by reviewing the filings on behalf of defendants MDOC and PHS. MDOC returned an executed waiver of service, and the due date for its answer was January 14, 2011.[11] MDOC first appeared in this case through counsel on November 30, 2010. Doc. Ent. 12; *see also* Doc. Ent. 16. On December 7, 2010, MDOC filed two motions (Doc. Entries 14 [Motion for Order to Revoke

---

[11]*See* February 22, 2011 docket entry. The U.S. Marshal attempted service upon MDOC and PHS by mail on November 15, 2010, and the docket indicates that the waivers of service were returned executed. Assuming the executed waivers were returned in a timely manner, the due date for defendants' answers was January 14, 2011. *See* Fed. R. Civ. P. 12(a)(1)(A) ("A defendant must serve an answer: (I) within 21 days after being served with the summons and complaint; or (ii) *if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent*[.]") (emphasis added).

Plaintiff's In Forma Pauperis Status], 15 [Motion to Stay]).  On June 16, 2011, MDOC filed its

motion to dismiss.  Doc. Ent. 43.

PHS returned an executed waiver of service, and the due date for its answer was January

14, 2011.  Doc. Ent. 19.  PHS first appeared in this case through counsel on December 17, 2010.

*See* Doc. Entries 17, 18, 20.  On January 14, 2011, PHS filed three motions.  Doc. Entries 22

[Motion for Extension], 23 [Motion to Revoke In Forma Pauperis Status], 24 [Motion to Stay].

On June 16, 2011, PHS filed an answer to the amended complaint.  Doc. Ent. 42.

Having reviewed the filings of defendants MDOC and PHS, I turn to plaintiff's July 14,

2011 arguments.  In his "motion for summary judgment," plaintiff claims that PHS did not abide

by Fed. R. Civ. P. 55.  Doc. Ent. 48 at 1 ¶ A.  Plaintiff also claims that neither PHS nor MDOC

"answer[e]d or filed a response to Plaintiff[']s [August 6, 2010 amended complaint]."  Doc. Ent.

48 at 2 ¶ B.  It is plaintiff's position that PHS and MDOC each defaulted by not responding by the

January 14, 2011 deadline, which was generated by execution of the waivers of service sent on

November 15, 2010.  Doc. Ent. 48 at 2.  Plaintiff characterizes his March 15, 2011 and March 25,

2011 letters (Doc. Entries 27 and 32) as motions for default judgment against PHS, apparently on

the basis that two of PHS's January 14, 2011 filings (Doc. Entries 23, 24) "failed to plead or

otherwise defend," Fed. R. Civ. P. 55(a), as to the amended complaint.  Doc. Ent. 48 at 2 ¶¶ C, D.

And, plaintiff points out, PHS's January 14, 2011 motion for an extension (Doc. Ent. 22) - filed

on the date a responsive pleading was due - was denied by this Court (Doc. Ent. 26).  Doc. Ent.

48 at 2.  Also, plaintiff claims that MDOC has not pleaded or responded, nor has it  requested an

extension of time within which to do so; and, notwithstanding defendant MDOC's June 16, 2011

motion to dismiss (Doc. Ent. 43), plaintiff maintains that MDOC has not pleaded or responded to

13

any of the issues in plaintiff's amended complaint. Doc. Ent. 48 at 2 ¶ E. It is plaintiff's position

that both MDOC and PHS are past the January 14, 2011 deadline to respond to the complaint.

Doc. Ent. 48 at 2. As for PHS's June 16, 2011 answer, affirmative defenses and jury demand

(Doc. Ent. 42), plaintiff notes that affidavits were not included and he requests that the Court

ignore PHS's answer (Doc. Ent. 42), on the basis that PHS's motion for extension (Doc. Ent. 22)

was denied. In other words, plaintiff claims that PHS is using its June 16, 2011 filing (Doc. Ent.

42) to answer the amended complaint (Doc. Ent. 7), even though the Court denied PHS's January

14, 2011 motion for extension (Doc. Ent. 22). Doc. Ent. 48 at 3.

On July 29, 2011,[12] PHS filed a response (Doc. Ent. 50) to plaintiff's purported summary

judgment motion (Doc. Ent. 48). PHS acknowledges that its answer was filed on June 16, 2011

(Doc. Ent. 42). PHS then points out that the Court's March 7, 2011 order (Doc. Ent. 26) granted

defendant PHS's motion to stay proceedings until resolution of defendant's motion to revoke

plaintiff's in forma pauperis status (Doc. Ent. 24), in addition to denying as moot defendant's

motion for enlargement of time to respond to complaint (Doc. Ent. 22). PHS then points out that

it filed its answer within fourteen (14) days of the Court's June 3, 2011 order (Doc. Ent. 38).

PHS argues that "[w]hile the Court's Order did not specifically lift the previously ordered stay or

command PHS to file a response within a specified time, PHS filed its Answer within fourteen

days of the Court's Order." In other words, "PHS treated the Court's Order as equivalent to a

denial of a motion to dismiss and answered within fourteen days as is required when a motion to

dismiss is denied." Doc. Ent. 50 at 2 (referencing Fed. R. Civ. P. 12(a)(4)(A)).

---

[12]On July 29, 2011, I entered an order setting the response deadline for August 29, 2011.
Doc. Ent. 49.

Plaintiff filed a reply on August 11, 2011.  Doc. Ent. 52.  After citing several sections of Fed. R. Civ. P. 12(a) (Doc. Ent. 52 at 2), plaintiff points to my March 7, 2011 order (Doc. Ent. 26) which denied as moot defendant's motion (Doc. Ent. 22) for enlargement of time to respond to the complaint, and notes that "if the court denies the motion . . . the responsive pleading must be served within 14 days after notice of the court's action[.]"  Fed. R. Civ. P. 12(a)(4)(A). Plaintiff apparently argues that defendants MDOC and PHS should have filed answers to plaintiff's amended complaint within fourteen (14) days of my March 7, 2011 order (Doc. Ent. 26) - *i.e.*, on or about March 21, 2011 - notwithstanding PHS's January 14, 2011 motion to stay (Doc. Ent. 24), which the Court granted on March 7, 2011 (Doc. Ent. 26), and notwithstanding PHS's January 14, 2011 motion to revoke plaintiff's in forma pauperis status (Doc. Ent. 23), which this Court denied on June 3, 2011 (Doc. Ent. 38).  It is plaintiff's position that "this court never set a different time for Defendants to file a responsive pleading to Plaintiff['s] amended summons and complaint."  Doc. Ent. 52 at 3.

Additionally, as to defendant PHS's argument that its January 14, 2011 motion to revoke in forma pauperis status (Doc. Ent. 23) and motion to stay (Doc. Ent. 24) entitles PHS to treat the Court's June 3, 2011 order (Doc. Ent. 38) denying the defendants' motions to revoke in forma pauperis status (Doc. Entries 14 and 23) as equivalent to an order denying a motion to dismiss, plaintiff notes that Judge Rosen's June 3, 2011 order (Doc. Ent. 38) denied MDOC's and PHS's motions to revoke in forma pauperis status (Doc. Entries 14 and 23).  Doc. Ent. 52 at 3.

As for defendants' argument that the Court's June 3, 2011 order (Doc. Ent. 38) did not specifically lift the stays imposed by my March 7, 2011 orders (Doc. Entries 25 and 26), plaintiff claims that, even if the Court's June 3, 2011 order (Doc. Ent. 38) had lifted the stays imposed on

March 7, 2011 (Doc. Entries 25 and 26), "[i]t still would [not have] had an adverse impact on any [ruling] and or [Fed. R. Civ. P.] or law[,]" amounting to "nothing more than harmless error." Doc. Ent. 52 at 3-4. Furthermore, plaintiff contends that PHS's January 14, 2011 motion (Doc. Ent. 24) to stay proceedings until resolution of PHS's same-day motion (Doc. Ent. 23) to revoke in forma pauper's status under 28 U.S.C. § 1915(g) did not exclude PHS or MDOC "from the time to file a response/reply to [his] amended summons and Complaint." It is plaintiff's position that, based upon the relief sought in the motions to stay (Doc. Entries 15 and 24), which were granted by the Court on March 7, 2011 (Doc. Entries 25 and 26), lifting the stay was inherent in the Court's June 3, 2011 order (Doc. Ent. 38), which denied the motions to revoke in forma pauperis status (Doc. Entries 14 and 23). Furthermore, plaintiff claims that the stays granted by the March 7, 2011 orders (Doc. Entries 25 and 26) were "never to allow [PHS or MDOC] more time to file a response / reply[,]" which is what PHS and MDOC are doing. Plaintiff also claims that the Court's June 3, 2011 order (Doc. Ent. 38), which denied the motions to revoke in forma pauperis status (Doc. Entries 14 and 23), "resolved" the stay previously requested by defendants (Doc. Entries 15 and 24) and granted by the Court on March 7, 2011 (Doc. Entries 25 and 26). In other words, "[t]his court did not have to lift the stay because [PHS and MDOC's motions to stay (Doc. Entries 15 and 24)] only requested a stay until resolution [of the motions to revoke in forma pauperis status (Doc. Entries 14 and 23)][,]" which were ruled upon by this Court on June 3, 2011 (Doc. Ent. 38). Doc. Ent. 52 at 4.

Furthermore, plaintiff claims that answers to the amended complaint were due on January 14, 2011 - the date generated by execution of the waivers of service sent on November 15, 2010. It is plaintiff's position that the Court's March 7, 2011 order (Doc. Ent. 26) denying PHS's

16

January 14, 2011 motion for extension (Doc. Ent. 22) kept the deadline for a responsive pleading at January 14, 2011, even though PHS had also filed two other motions on January 14, 2011 (Doc. Entries 23 and 24).  Plaintiff claims that, in light of the Court's March 7, 2011 order (Doc. Ent. 26) denying PHS's motion for extension (Doc. Ent. 22), permitting PHS and MDOC to file a responsive pleading later than January 14, 2011 would be defying the Court's March 7, 2011 order (Doc. Ent. 26).  Likewise, as to the other two January 14, 2011 motions (Doc. Entries 23 and 24), plaintiff argues that PHS and MDOC would be entitled "[t]o file a responsive pleading after the Court has already ruled [Doc. Ent. 26] on the motion to deny an extension of time [Doc. Ent. 22]."  As plaintiff puts it, it would be as if MDOC and PHS were "allowed to have more th[a]n one [bite] at the apple to be able to secure [their] responsive pleading."  In other words, plaintiff contends that the Court's March 7, 2011 denial of the January 14, 2011 motion for extension confirmed the deadline for a responsive pleading for January 14, 2011.  Plaintiff further claims that, even if "PHS treated the Court's [June 3, 2011] Order [Doc. Ent. 38] as equivalent to a denial of a motion to dismiss and answered within fourteen days as is required when a motion to dismiss is denied[,]" Doc. Ent. 50 at 2, defendants do not address "how they treated" the Court's March 7, 2011 order (Doc. Ent. 26) denying the motion for extension (Doc. Ent. 22).  Doc. Ent. 52 at 5.  Plaintiff further asserts that, even if the Court's June 3, 2011 order (Doc. Ent. 38) did not lift the stays imposed by my March 7, 2011 orders (Doc. Entries 25 and 26), my March 7, 2011 order (Doc. Ent. 26) ruled upon PHS's January 14, 2011 motion for extension (Doc. Ent. 22) and was still in place.  Therefore, plaintiff contends, "the only matter left for the court to decide was [plaintiff's] in forma pauperis status."  Doc. Ent. 52 at 6.

On August 18, 2011, defendant MDOC filed a response, wherein it argues that "[t]he [MDOC] is a State agency that has immunity under the Eleventh Amendment[.]"  Doc. Ent. 53 at 8. Renewing its June 16, 2011 motion to dismiss (Doc. Ent. 43), MDOC claims it "is entitled to dismissal of this matter, despite plaintiff's [August 6, 2010] amended complaint."  Doc. Ent. 53 at 9.

Having considered plaintiff's motion (Doc. Ent. 48), PHS's response (Doc. Ent. 50), plaintiff's reply (Doc. Ent. 52) and MDOC's response (Doc. Ent. 53), the Court should deny plaintiff's purported motion for summary judgment (Doc. Ent. 48).  First, defendants PHS and MDOC have not "failed to plead or otherwise defend[.]" Fed. R. Civ. P. 55(a).  Defendant PHS filed an answer on June 16, 2011 (Doc. Ent. 42), and, even if defendant MDOC's June 16, 2011 motion to dismiss (Doc. Ent. 43) was not an answer to plaintiff's amended complaint, *see* Fed. R. Civ. P. 7(a) ("Pleadings."), the motion to dismiss was brought pursuant to Fed. R. Civ. P. 12(b) ("How to Present Defenses.").

Second, plaintiff misinterprets the effect of the Court's March 7, 2011 order (Doc. Ent. 26) denying as moot defendant PHS's motion for extension (Doc. Ent. 22); my order did not, as plaintiff suggests, rule "to now allow [PHS or MDOC] any fu[r]ther time to file a responsive pleading, and that the time frame that already was [allowed] was [sufficient][,]" which plaintiff contends is "why the court never order[e]d a new [deadline] or [altered] the time in which a responsive pleading was due."  Doc. Ent. 52 at 3.  Nor did my order deny on the merits PHS's request for "more time to file a response[,]" Doc. Ent. 52 at 5.  The denial of the motion for extension as moot meant that the Court need not rule on the request for extension "[b]ecause a stay ha[d] been granted."  Doc. Ent. 26.

18

Third, plaintiff correctly notes that the Court's June 3, 2011 order (Doc. Ent. 38) "did not specifically lift the previously order[e]d stay or command[,]" entered on March 7, 2011 (Doc. Entries 25 and 26). Doc. Ent. 52 at 3. However, the March 7, 2011 orders were "self-executing," because the stays imposed by these orders were valid until resolution of the motions to revoke plaintiff's in forma pauperis status (Doc. Entries 14 and 23). Doc. Entries 25 and 26. Once Judge Rosen entered his June 3, 2011 order (Doc. Ent. 38) denying MDOC and PHS's motions to revoke plaintiff's in forma pauperis status (Doc. Entries 14 and 23), the stays were lifted. Then, on June 16, 2011 - thirteen (13) days after the entry of Judge Rosen's order - PHS filed an answer (Doc. Ent. 42) and MDOC filed a motion to dismiss (Doc. Ent. 43). As defendant PHS noted in its response, this complied with the fourteen (14) day period set by Fed. R. Civ. P. 12(a)(4)(A). *See* Doc. Ent. 50 at 2. In the absence of an post-stay order providing a deadline by which to respond to the amended complaint, PHS's treatment of the Court's June 3, 2011 order (Doc. Ent. 38) as akin to the denial of a Fed. R. Civ. P. 12 motion to dismiss - and apparently MDOC's similar treatment of the order - was a reasonable one.

Fourth, I note plaintiff's statement that PHS's January 14, 2011 motion for extension (Doc. Ent. 22) was the only filing which addressed the time within which to respond to the amended complaint. Doc. Ent. 52 at 5. Yet, MDOC filed its motion to stay on December 7, 2010 (Doc. Ent. 15); PHS filed its motion to stay on January 14, 2011 (Doc. Ent. 24); and the March 7, 2011 orders (Doc. Entries 25 and 26) stayed *proceedings*.

For these reasons, the Court should deny plaintiff's July 14, 2011 motion for summary judgment (Doc. Ent. 48).

**3.    Plaintiff's August 1, 2011 motion for the appointment of counsel (Doc. Ent. 51)**

19

On August 1, 2011, plaintiff filed a motion for the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). Doc. Ent. 51 at 1-2. Within this request, he characterizes his July 20, 2010 and March 14, 2011 filings (Doc. Ent. 3 [Application for Appointment of Counsel Financial Affidavit], Doc. Ent. 28 [Request for Court Appointed Attorney and Letter][13]) as similar requests. Also, plaintiff refers to the Court's June 3, 2011 order (Doc. Ent. 38) denying the requests to revoke plaintiff's in forma pauperis status (Doc. Entries 14 and 23).

Upon consideration, the Court should deny plaintiff's August 1, 2011 motion for the appointment of counsel (Doc. 51) without prejudice to renewal if this case survives dispositive motion practice, proceeds to trial and/or other circumstances warranting the appointment of counsel arise.

## III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but

---

[13]In this letter, dated March 8, 2011 and filed March 14, 2011, plaintiff complains that the law library contains limited federal law resources and requests that, if the Court does not grant his request to appoint counsel, the Court require the MDOC "to provide plaintiff with [access to] the [appropriate] documents and forms[,] [including] federal law books[,]" during the pendency of this lawsuit. It is plaintiff's position that the inadequate federal resources are denying him his First Amendment right to access the court. Doc .Ent. 28 at 2.

fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 9/7/11

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on September 7,  2011.

s/Eddrey Butts
Case Manager