UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD JAMAL SANDERS,

        Plaintiff,

                                        CASE NO. 2:10-CV-12846

      v.                        CHIEF JUDGE GERALD E. ROSEN

                                      MAGISTRATE JUDGE PAUL J. KOMIVES

PRISON HEALTH SERVICES, INC., et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT PRISON HEALTH
SERVICES' MOTION FOR SUMMARY JUDGMENT (docket #67)**

I.    <u>RECOMMENDATION</u>: The Court should grant defendant Prison Health Services' motion for summary judgment.

II.    <u>REPORT</u>:

A.    *Background*

        Plaintiff Howard Jamal Sanders commenced this action on July 20, 2010, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff filed an amended complaint on August 6, 2010. Plaintiff alleges that he was denied appropriate medical care while incarcerated at various Michigan Department of Corrections (MDOC) facilities. Named as defendants are Prison Health Services, Inc. (PHS), PHS Chief Executive Officer Richard Hallworth; PHS President of State Corrections Lawrence Pomeroy, Haresh Pandya, and the MDOC Regional Medical Office. Through various orders, plaintiff's claims against all defendants except PHS have been dismissed.

        In his amended complaint, plaintiff alleges that he submitted a kite requesting to be seen for painful feet on May 24, 2010. He was scheduled for an appointment on June 1, 2010. However,

1

the pain was too severe to wait for his appointment, and he arranged to be seen on May 28, 2010, at health services while other inmates were in the medication line. The nurse on duty asked what the problem was, and examined his foot in front of the other inmates. The nurse gave him over the counter pain medication. Plaintiff alleges that as a result of the public examination he was exposed to ridicule from other inmates. He further alleges that on June 18, 2010, he complained that he had not yet been seen by a doctor. Finally, plaintiff alleges that he was denied routine dental cleaning, and that he was not provided with prescription eyeglasses.

The matter is currently before the Court on PHS's motion for summary judgment. PHS contends that it is entitled to summary judgment because: (1) PHS was not responsible for providing nursing or dental care, the scheduling of appointments, or the delivery of plaintiff's eyeglasses; (2) plaintiff has failed to show that a policy or procedure of PHS caused the alleged violation of his rights; (3) plaintiff cannot establish that the one PHS provider who treated him exhibited deliberate indifference to his medical needs; and (4) plaintiff failed to exhaust his administrative remedies. Plaintiff filed a response to defendant's motion on May 21, 2012.

B.    *Legal Standards*

1.    *Summary Judgment Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52

2

(citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also*, FED. R. CIV. P. 56(c)(1) (moving party may meet its burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).  To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue.  As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to  return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-

23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party."  *Sutherland*, 344 F.3d at 613.

  2. *Eighth Amendment Medical Care Claims*

  The Eighth Amendment provides:  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend. VIII.  In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense.  In its application by the courts, the amendment actually protects a wide assortment of interests.  It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion).  *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

  The Constitution "does not mandate comfortable prisons."  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517,

526-27 (1984)).  If the offending conduct is not a criminal penalty, then it must reflect an

"'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition

on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle*

*v. Gamble*, 429 U.S. 97, 103 (1976)).  Such claims must satisfy both an objective and a subjective

test.  *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).  Under this

analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the

nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks*

*v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  The plaintiff bears the burden of proving these

elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious

to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349

(1981).  To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized

measure of life's necessities." *Rhodes*, 452 U.S. at 349.  The objective component is contextually

driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8

(quoting *Estelle*, 429 U.S. at 103).  The subjective prong asks whether the officials acted with a

sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302;

*Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).  In determining whether an official acted

wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see*

*Estelle*, 429 U.S. at 104-06.  Under this "deliberate indifference" standard, "a prison official may

be held liable under the Eighth Amendment for denying humane conditions of confinement only if

he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to

take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.  A prison official is not free to

ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate.  *See id*. at 843-44.  However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances.  *See id*. at 844-45.  In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice."  *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied him medical treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*.  In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Estelle*, 429 U.S. at 105.  Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis.  *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).  Importantly, however, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

    3.    *Corporate Liability*

It is well established that liability in a § 1983 action cannot be based on a theory of

*respondeat superior. See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Thus, for example, in the context of a municipality, a plaintiff cannot establish the municipality's liability unless he shows that "deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 415 (1997). Thus, in the context of a claim against a municipality, a plaintiff must establish both (1) an underlying violation of his constitutional rights, and (2) that the violation resulted from the municipality's own deliberately indifferent policies. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (explaining that "proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive force is quite beside the point.").

This rule of municipal liability applies equally to private corporations that are deemed state actors for purposes of § 1983. *See Street v. Corrections Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996); *see also*, *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (citing cases);

*Dashley v. Correctional Med. Servs., Inc.*, 345 F. Supp. 1018, 1021 (E.D. Mo. 2004).  Thus, PHS,

"although clearly a state actor and therefore a proper party to this § 1983 action, cannot be held

vicariously liable for the actions of its agents . . . .  Hence, [PHS}'s liability must . . . be premised

on some policy that caused a deprivation of [plaintiff]'s Eighth Amendment rights."  *Starcher v.*

*Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir. Mar. 26, 2001).

C.     *Analysis*

        In view of the foregoing standards, the Court should conclude that PHS is entitled to

summary judgment for two reasons.  First, plaintiff cannot establish an underlying violation of his

constitutional rights. With respect to his dental and eye care claims, plaintiff cannot establish that

the medical providers' acts or omissions were taken with respect to a serious medical need.  A

serious medical condition is "a condition of urgency, one that may produce death, degeneration, or

extreme pain."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  To be sure, a number of

courts have found that a delay in providing dentures or other dental care may implicate a serious

medical need; in each of those cases, however, the prisoner alleged that the delay in or denial of

treatment caused other severe symptoms, such as headaches, disfigurement, bleeding, severe pain,

and loss of weight.  *See Farrow v. West*, 320 F.3d 1235, 1244-45 (11th Cir. 2003); *Wynn v.*

*Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir.

1989).  Here, plaintiff alleges in his complaint and asserts in his responses only that he was denied

a routine dental cleaning.  Routine, preventative dental care does not constitute a serious medical

need.  *See Bumpus v. Watts*, 448 Fed. Appx. 3, 5 (11th Cir. 2011); *Hallett v. Morgan*, 296 F.3d 732,

746 (9th Cir. 2002); *Jackson v. Lane*, 688 F. Supp. 1291, 1291-92 (N.D. Ill. 1988).  Likewise,

plaintiff has not alleged or provided any evidence to show that the delay in providing him with

prescription eyeglasses caused serious symptoms such as headaches, dizziness, and double vision, or that it affected his ability to participate in the daily activities of prison life. In the absence of any such evidence, plaintiff's poor vision and need for eyeglasses do not by themselves constitute a serious medical need. *See Davidson v. Desain*, 817 F. Supp. 2d 166, 187-88 (W.D.N.Y. 2011); *Glass v. Orleans Parish Criminal Sheriff*, No. 04-3353, 2005 WL 1501019, at *3 (E.D. La. June 22, 2005).

Likewise, plaintiff cannot sustain an Eighth Amendment claim based on the fact that a nurse examined his foot in front of other inmates. "The Eighth Amendment's right to be free from cruel and unusual punishment does not guarantee that plaintiff will receive any and all medical care in total privacy." *Rodriguez v. Ames*, 287 F. Supp. 2d 213, 219 (W.D.N.Y. 2003). Here, plaintiff describes a brief examination of his swollen foot in front of other inmates. His condition did not involve "an unusual medical problem which, if disclosed unnecessarily to other inmates, would likely expose plaintiff to discrimination, intolerance, or potential violence." *Id*. In these circumstances, plaintiff cannot show that the public examination of his foot violated any constitutional right. *See Newman v. County of Ventura*, No. CV 09-4160, 2010 WL 1266719, at *9 (C.D. Cal. Mar. 8, 2010); *Rodriguez*, 287 F. Supp. 2d at 219.

With respect to his foot condition, plaintiff cannot demonstrate that any provider acted with deliberate indifference. The medical records submitted by defendant establish that plaintiff was issued arch supports for his flat feet on August 13, 2008, and that those supports were replaced from time to time. At the specific times relevant to plaintiff's complaint, he was seen by a nurse on May 28, 2010, who gave him pain medication. Plaintiff was again examined by a nurse on June 1, 2010, and was scheduled to see a doctor. He was seen again on June 3, and was given pain medication.

9

On June 18, he was again seen by a nurse, and on July 1 he was seen by a doctor, but by that time plaintiff's problems had resolved. *See* Def.'s Mot. for Summ. J., Ex. A-1. As the Seventh Circuit has explained, "'[d]eliberate indifference' means *recklessness* in a criminal, subjective sense: disregarding a risk of danger so substantial that knowledge of the danger can be inferred. Such disregard is tantamount to intending that the injury occur." *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 941 F.2d 344, 348 (7th Cir. 1991)) (citations omitted); *accord Farmer*, 511 U.S. at 836 (equating "deliberate indifference" to the "recklessness" standard under criminal law); *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (negligence insufficient to establish deliberate indifference); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988) (gross negligence insufficient). Plaintiff does not point to any evidence showing that any of the providers exhibited this state of mind. On the contrary, the medical personnel repeatedly examined plaintiff, provided pain medication, and scheduled him for doctor visits. This pattern of treatment, even if different from what plaintiff would have preferred–indeed, even if negligent–does not demonstrate that any medical provider was deliberately indifferent to plaintiff's foot condition. Because plaintiff is not able to establish an underlying constitutional violation, he likewise cannot establish PHS's liability.

Second, even assuming that plaintiff could establish an underlying constitutional violation, plaintiff cannot establish that such a violation resulted from a policy or procedure of PHS that was itself deliberately indifferent to his medical needs. Defendant has submitted evidence that it is not responsible for determining the need for or the time of an appointment to see a PHS doctor; rather, those determinations are made by MDOC-employed nurses. *See* Def.'s Mot., Ex. A, ¶ 8. Further, PHS has no role in the formulation of policies concerning triage and scheduling of patients, or the

setting in which examinations occur.  *See id*. ¶ 10.  Defendant has further submitted evidence that, though its contract with MDOC, it does not provide nursing or dental services, nor was it responsible for providing plaintiff's eyeglasses.  *See id*., Ex. B, Aff. of Eugene Mitchell, ¶ 3.   Because PHS was not responsible for dental, nursing, or eye care at the facility, it cannot be liable for any constitutional deprivations arising from that care.  *See Samuel v. First Correctional Medical*, 463 F. Supp. 2d 488, 495 (D. Del. 2006).

Plaintiff offers no evidence to rebut these averments.  Rather, plaintiff contends only that Mitchell's affidavit is entitled to no weight because Mitchell did not sign the contract, and "the only person legaly [sic] qualified to make any affidavit to a[n] alleged PHS contract is the actual persons who signed the alleged PHS contract."  Pl.'s Resp., at 16.  However, plaintiff can point to no such legal requirement.  Rule 56 requires only that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  FED. R. CIV. P. 56(c)(4).  Mitchell avers that he is employed by defendant and that he has "knowledge of PHS' contract with the Michigan Department of Corrections ("MDOC") for the provision of health care services to inmates incarcerated in prisons administered by the MDOC."  Def.'s Mot., Ex. B, ¶ 2. Thus, his affidavit is made on personal knowledge, regardless of whether he actually participated in the contract negotiations.  *See Akers v. Beal Bank*, 845 F. Supp. 2d 238, 243 (D.D.C. 2012) ("An affiant who reviews the business records of the organization that he or she is affiliated with, and who testifies on the basis of information acquired through the performance of his or her official duties, may be declared competent by the court to testify as to those records.");  *Bellah v. American Airlines, Inc.*, 623 F. Supp. 2d 1183, 1187 (E.D. Cal. 2009) (for purposes of summary judgment affidavit,

affiant's personal knowledge of terms and operation of contract could be presumed from her management position).[1]

In his response, plaintiff contradicts certain aspects of defendant's account of his medical care. For example, he contends (in contradiction to each complaint that he has filed) that the examination of his feet on May 28, 2010, was done by a PHS physician, not by a nurse. Even if true, however, he offers nothing to show that the public examination was the result of any policy of PHS. Similarly, he contends that PHS doctors themselves delayed in seeing him, but again fails to point to any policy of PHS that resulted in this delay, rather than the actions of the PHS doctors themselves. Throughout his response, plaintiff merely contends that PHS was responsible for providing him with medical care. He does not, however, allege how any policy or procedure of PHS resulted in the alleged delays or denials of care. In short, plaintiff's entire response is merely an attempt to hold PHS vicariously liable for the alleged acts and omissions of the nurses and doctors who treated plaintiff. As explained above, PHS cannot be held vicariously liable, and thus it is entitled to summary judgment.

D.    *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff was failed to establish a genuine issue of material fact with respect to whether his constitutional rights were violated, and if so with respect to whether such violations resulted from the deliberately indifferent policies or practices of PHS. Accordingly, the Court should grant defendant PHS's motion for summary judgment.

---

[1]Plaintiff also asserts that he "has knowledge of a verbal agreement between PHS and MDOC that PHS will provide nursing, dental, and ship glasses." Pl.'s Resp., at 16. He does not explain the basis for this knowledge.

12

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: 1/29/13

13

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on January 29, 2013.

s/Eddrey Butts
Case Manager